**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

DR. HENRY VAZQUEZ,
on behalf of himself and
all others similarly situated,

       Plaintiff,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

       Defendant.

_____/

       **CLASS ACTION**
       **JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiff, DR. HENRY VAZQUEZ, on behalf of himself and all others similarly situated (the "Class" or "Class Members"), hereby brings this action against ANHEUSER-BUSCH COMPANIES, LLC ("AB") for its sale of alleged "Abbey" Beer that, quite simply, isn't. Plaintiff states and alleges as follows:

### NATURE OF CLAIM

1.    This class action is brought on behalf of Plaintiff and all other similarly situated individuals who purchased Leffe Beer[1], and were deceived by AB's labeling and packaging into believing that Leffe Beer is brewed in an abbey, and thereby brewed in smaller quantities under the supervision of monks. The packaging and labeling on Leffe Beers include the words "Abbey Ale" and "Abbaye de Abbey of Leffe," a picture of an abbey, and the "Story of the abbey of Leffe."

---

[1] As used herein, the terms "Leffe Beer" refers to six-pack bottles of Leffe Brown and Leffe Blond.

Further, the labels state "Anno 1240," implying that Leffe Beer has been brewed since that date in an abbey.

2.      Through its marketing, AB bolsters its deceptive labeling and packaging by making misleading claims, including the following:

- "[I]t's been crafted since 1240."

- "[F]irst brewed and perfected by Belgian Monks over 700 years ago."

- "Seven centuries of Belgian craftsmanship in every chalice. #Leffe, since 1240."

- "After 750 years of happy hours, it's safe to say we've perfected the pour."

- "Some judge their heritage and craft by years. Ours is judged in centuries. Leffe, since 1240."

- "Artistry takes time. 750 years exactly."

- "Leffe's Blonde ale is a masterful combination of pale malt, water, hop, yeast and 750 years of #Belgian tradition."

- "Belgian monks established the Leffe abbey in 1152 and began brewing Leffe in 1240."[2]

3.      In reality, Leffe Beer has not been brewed at the Abbey of Leffe since the Abbey was destroyed during the French Revolution.  Instead, Leffe Beer is mass-produced at the Stella Artois Brewery industrial complex, not crafted in an abbeyby monks with centuries of skill at the craft.  In fact, the beer is produced with little human involvement because the Stella Artois Brewery is fully automated.

---

[2] *See* https://www.instagram.com/leffe.usa/; (last accessed on January 27, 2016).

4.      AB has gone to great lengths to conceal that Leffe Beer is mass-produced in an automated factory and not an abbey as its labeling and marketing suggest.

5.      AB knowingly and intentionally concealed and failed to disclose to its consumers that Leffe Beer is not brewed in abbey.  Through its deceptive labeling, packaging, and marketing, AB has charged consumers, including Plaintiff and Class Members, a premium over its competitors' products. Further, AB has charged consumers, Plaintiff and Class Members a premium over Stella Artois Beer, even though Stella Artois is AB's product and both Leffe and Stella Artois Beet are brewed in the same factory and sold in the same marketplace.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of the Plaintiff Class is a citizen of a state different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7.      The Court has personal jurisdiction over the Defendant because it is authorized to do business and in fact does business in the Southern District of Florida; it has sufficient minimum contacts with this District; and the Defendant otherwise intentionally avails itself of the markets in this State through the promotion, marketing, distribution and sale of the alleged "Abbey" beer thus rendering the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

8.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, Class Members residing in this district have been harmed as a

result of Defendant's acts or omissions, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

9.     Plaintiff, Dr. Henry Vazquez, is a natural person who, at all times relevant to this action, was a resident of the State of Florida, Miami-Dade County.

10.     Defendant, AB, is a Delaware limited liability corporation, with its principal place of business in St. Louis, Missouri.  AB's registered agent in the State of Florida is CT Corporation System, located in Plantation, Florida.  AB is wholly owned and controlled by Anheuser-Busch InBev SA/NV ("AB-InBev"), a publicly traded company.  AB-InBev was formed in November of 2008 following the merger of InBev and Anheuser Busch.  AB-InBev is the world's largest producer of alcoholic beverages.  AB InBev's annual profits typically exceed $20 billion.

11.     Leffe Beer is a beer brand manufactured by InBev Belgium, the European operating arm of AB-InBev.  InBev Belgium is based in Leuven, Belgium.

12.     AB imports, markets, and sells Leffe Beer throughout the United States, including Florida.

## FACTUAL ALLEGATIONS

### The Abbey of Leffe, Leffe Beer, and AB-InBev

13.     The Abbey of Leffe (pictured below) was founded in 1152 on the Meuse River in the province of Namur in southern Belgium.



14.     The Abbey of Leffe was destroyed during the French revolution in approximately 1794.  The Abbey was then reopened in the twentieth century and beer production for the Abbey of Leffe resumed in 1952 at the Lootvoet brewery in Overijse, Belgium, pursuant to an agreement with Lootvoet.

15.     The agreement between the Abbey of Leffe and the Lootvoet brewery is believed to be the first arrangement of its kind between an abbey brewery and a commercial brewery.

16.     In 1977, the Lootvoet brewery merged with the Brasserie Artois and beer production was transferred from Overijse to Mont-Saint-Guibert, Belgium.

17.     In 1987, a merger of the Brasseries Artois and Piedboeuf resulted in the Brasserie Interbrew.  Through a series of acquisitions and mergers, Interbrew ultimately became AB-InBev in 2008.

18.     The Abbey of Leffe is located at the following address:  Pl. de l'Abbaye, 5500 Dinant, Belgium.  The Abbey is located next to a river in a historic town, and is surrounded by a forest.

19.     At all times relevant to this Complaint, Leffe Beer has been brewed at the AB-InBev Stella Artois Brewery industrial complex (pictured below), which is located at Vuurkruisenlaan 4, 3000 Leuven, Belgium.  AB-InBev pays monetary royalties to the Abbey of Leffe but, contrary to AB's misrepresentations, no Leffe Beer is produced at the Abbey of Leffe, and the Abbey has no involvement in the brewing, manufacturing, bottling, shipping, distribution, or marketing of Leffe Beer.



20.     The Stella Artois Brewery is a massive industrial complex (aerial shot below) with the capacity to brew approximately 9 million hectoliters annually.  The facility is automated and

there is little human involvement in the process of making Leffe Beer.  One visitor to the brewery compared it to an "oil refinery."[3]



21.     In late 2015, InBev Belgium announced that it would be investing an additional 55 million Euros to add a fourth brewing line and expand the fermentation and filtration plants at the Stella Artois Brewery, which is located in Leuven, Belgium.  As a result of this investment,

---

[3] *See* https://www.youtube.com/watch?v=y4W-_GBgF8Q; (last accessed on January 22, 2016).

production at the Stella Artois Brewery will be increased from 9 million hectoliters to 12 million hectoliters.

### AB Intentionally Misleads Consumers

22.    Over the past few decades, monk-brewed abbey ales – beers brewed by monks in abbey breweries – have continued to grow in popularity.  Commercial breweries, like AB, have sought to capitalize on the growing popularity of monk-brewed abbey ales by licensing the names of existing and non-existing abbeys.  As a result, commercial breweries such as AB have engaged in misleading labeling and advertising, using images and names of abbeys and monks to deceive consumers into purchasing beer under the belief that the beers are authentic monk-brewed abbey ales.

23.    Such misleading advertising was the focus of a 1997 Bloomberg Business article titled *Pious Brewers and Godless Imitators*.[4]  As discussed in the article:

> But such renown has brought the monks a big problem--godless imitators. Giant multinational brewers, such as Interbrew in Belgium and Danone in France, **have copied the Trappist style and licensed the names of Belgian abbeys [like] Abbaye de Leffe** and Grimbergen, **neither of which produce beer**. Other secular brewers pick names echoing ecclesiastical ruins, shrines, churches, and local saints. Many put pictures of monks on their labels. One brand, Corsendonck, marketed its product as "Monk's Ale."[5]

---

[4] *See* http://www.bloomberg.com/bw/stories/1997-12-28/pious-brewers-and-godless-imitators; (last accessed on January 19, 2016); (emphasis supplied).

[5] *See id*.

24.     The article contained an interview with Dom Thomas, a Trappist monk at the Abbaye Notre-Dame de Scourmont, where Chimay beer[6] is brewed.  As Dom Thomas complained: "If you see a monk and an abbey on the label, you think we make it," he says. "It's dishonest."

25.     Notwithstanding the fact that it mass-produces Leffe Beer in an automated facility, AB has sought to capitalize on the growing popularity of monk-brewed abbey ales by replicating the labels of authentic monk-brewed abbey ales and by deceiving consumers into believing that Leffe Beer is brewed in an abbey, and thereby brewed in smaller quantities by monks.

26.     Through its marketing materials, AB falsely claims that "[w]ith origins dating back to 1240, Leffe is one of the few remaining true Belgian abbey beers."[7]  To the contrary, Leffe Beer is no in no way "one of the few remaining true Belgian abbey beers," but rather a mass-produced product not unlike Budweiser.

27.     Other AB marketing materials are riddled with false representations, the sole purpose of which is to bolster AB's deceptive labeling, including the following statements:

-   "[I]t's been crafted since 1240."

-   "[F]irst brewed and perfected by Belgian Monks over 700 years ago."

-   "Seven centuries of Belgian craftsmanship in every chalice. #Leffe, since 1240."

-   "After 750 years of happy hours, it's safe to say we've perfected the pour."

-   "Some judge their heritage and craft by years. Ours is judged in centuries. Leffe, since 1240."

---

[6] Chimay beer has been brewed by Trappist monks since 1862 and is the world's largest Trappist monk abbey brewery in the world.

[7] See http://www.ab-inbev.com/content/dam/universaltemplate/abinbev/pdf/media/press-kit/2014/Brand_Factsheets_2015.pdf; (last accessed on January 22, 2016).

9

- "Artistry takes time. 750 years exactly."

- "Leffe's Blonde ale is a masterful combination of pale malt, water, hop, yeast and 750 years of #Belgian tradition."

- "Belgian monks established the Leffe abbey in 1152 and began brewing Leffe in 1240."[8]

28. Consistent with its deceptive marketing materials, Leffe Beer labels (pictured below) were created to deceive consumers into believing that the beer is brewed in an abbey by using the words "Abbey Ale" and "Abbaye de Abbey of Leffe," a picture of an abbey, and the "Story of the abbey of Leffe."  Further, the labels state "Anno 1240," implying that Leffe Beer has been brewed since that date in an abbey.

---

[8] *See* https://www.instagram.com/leffe.usa/; (last accessed on January 27, 2016).













29.   In sharp contrast, AB's competitors use truthful labels to adequately advise consumers that their products are "Abbey **Style**" ales, and not ales brewed in an abbey:











30.     An additional example of truthful advertising can be found on the label of Birra Nursia, a beer brewed by Benedictine Monks at the Monastery of St. Benedict in Norcia, Italy.  As shown below, the label on Birra Nursia correctly states that the beer is an "Abbey Ale," since, unlike Leffe Beer, the product is actually made by monks in an abbey.





31.     In order to capitalize on the monk-brewed abbey ale market, AB knowingly and purposefully misrepresented to consumers that Leffe beer is brewed in an abbey, a statement which AB knows is false.

32.     To further deceive consumers into believing that Leffe Beer is brewed in an abbey, the back of the Leffe Beer labels make reference to the Abbey of Leffe and contain the address for

the Abbey: "Brewed by N.V. INBEV BELGIUM S.A., B-1070 BRUSSELS, FOR BR. ABBAYE DE LEFFE N.V./S.A. PLACE DE L'ABBAYE 1, B-5500 DINANT, BELGIUM."[9]

33.     This language was carefully worded by AB to deceive consumers into believing that the Abbey of Leffe is somehow involved in the production of Leffe Beer.

34.     Contrary to AB's misrepresentation, the Abbey of Leffe has no involvement in the brewing, bottling, shipping, distribution, or marketing of Leffe Beer.  Rather, AB simply pays the Abbey of Leffe royalties for the use of the Abbey's name.

35.     The above quoted language is further deceptive in that "B-1070 Brussels" is only an abbreviation of the address for InBev Belgium's corporate headquarters.  The full address is Industrielaan 21 Boulevard Industriel 1070 Brussels, Belgium.

36.     "Place de l'Abbaye 1, B-5500 Dinant, Belgium" is the address for the Abbey of Leffe.  Leffe Beer is not brewed at this location; it is brewed in mass quantities at the Stella Artois Brewery in Leuven, Belgium.  The town of Leuven, where Leffe Beer is brewed, is approximately 62 miles away from the town of Dinant, where the Abbey of Leffe is located.

37.     In examining the Leffe Beer labels, there is no way for a consumer to determine whether the beer is in fact brewed in an abbey or somewhere else, since the labels make absolutely no reference to the true location of where the beer is brewed.

38.     Notably, and as further evidence of AB's intentional conduct, the Stella Artois Beer label clearly states that is "Brewed by the Stella Artois Brewery," which is located in Leuven, Belgium.  To avoid consumer deception, Leffe Beer labels should similarly state that Leffe Beer is "Brewed by the Stella Artois Brewery."  Instead, AB intentionally mislabeled Leffe Beer by making reference to the "Abbaye de Leffe" in order to confuse consumers.

---

[9] As discussed in detail below, AB, in order to mislead the United States Alcohol and Tobacco Tax and Trade Bureau, submitted labels for approval that did not contain this language.

39.     Also demonstrating AB's active concealment and intent to confuse consumers is the fact that there are no publicly available corporate materials disclosing that Leffe Beer is brewed at the Stella Artois Brewery.

40.     For example, AB's website for its Belgium brewery tours provides information for the Stella Artois, Hoegaarden, and Juliper breweries, but not the Leffe brewery.[10]

41.     In response to a request for the true location of the Leffe Beer brewery, AB will generally state as follows, again concealing the fact that Leffe Beer is brewed at the Stella Artois Brewery:

> We would like to thank you for your interest in our company and our products.
>
> For more information about our breweries, please visit our websites www.breweryvisits.com (Jupiler, Stella), www.hoegaarden.com (Hoegaarden)
>
> You can book a visit or guided tour via these websites.
>
> You can also visit the Maison Leffe at Dinant. No reservation is needed . You can find more information on http://www.leffe.com/en/maison-leffe
>
> We hope to welcome you soon in one of our breweries.
>
> Sincerely
>
> Consumer Care

42.     The "Maison Leffe at Dinant" identified in the response above is not where Leffe is brewed, but rather a museum located within the Abbey of Leffe in the town of Dinant, Belgium.

---

[10] *See* http://www.breweryvisits.com/; (last accessed on January 19, 2016).

43.     Additionally, while the Abbey of Leffe's website contains the entire history of Leffe Beer dating back to the twelfth century, the present location of the brewery is glaringly absent.[11]

44.     Similarly, the official website for Leffe Beer contains no information with respect to where the beer is brewed.[12]

45.     Remarkably, while the French and Dutch language versions of the Leffe Beer website discuss AB-InBev's ownership of various brands, including Stella Artois and Leffe, the English version of the website makes no reference to Stella Artois.[13]  This demonstrates AB's intentional efforts to deceive US consumers by erasing all connections between Leffe Beer and the Stella Artois brewery.

46.     In all, AB's labeling, in conjunction with the corporate and marketing materials discussed above, demonstrate AB's intentional concealment of the location where Leffe Beer is brewed, the sole purpose of which is to deceive and confuse consumers.

47.     AB, seeking to benefit financially from the growing popularity of monk-brewed abbey ales, markets and sells a product which contains a misleading label.  In order to buttress its false labels, AB has placed a misleading address on the back of its labels, and actively conceals that Leffe Beer is brewed at the Stella Artois Brewery, which is located in Leuven, Belgium.

48.     During the relevant statutory period, AB manufactured, marketed, and sold beer with labels that misled consumers, including Plaintiff.

---

[11] *See* http://www.abbaye-de-leffe.be/The-current-beer; (last accessed on January 22, 2016).

[12] *See* http://www.leffe.com; (last accessed on January 22, 2016).

[13] *See* https://translate.google.com/translate?hl=en&sl=nl&u=http://www.leffe.com/nl/faq&prev=search; https://translate.google.com/translate?hl=en&sl=fr&u=http://www.leffe.com/fr/faq&prev=search; http://www.leffe.com/en/; (last accessed on January 22, 2016).

49.     AB knowingly sold mislabeled Leffe Beer to consumers, including Plaintiff, with the intent to deceive consumers.

50.     This is not the first time AB has engaged in misrepresentations to consumers with respect to its products.  In 2013, a class action was filed against AB in the Southern District of Florida as a result of falsely labeling Beck's Beer as a beer brewed in Germany, when the beer is actually brewed in the United States.  AB ultimately settled that case, and agreed to refund customers and change the labels on Beck's Beer to accurately reflect where the beer is brewed. *See Marty v. Anheuser-Busch Companies, LLC*, Case No. 13-cv-23656-JJO (S.D. Fla. 2013).

51.     Also in 2013, a class action was filed against AB in Miami-Dade County Circuit Court as a result of falsely labeling Kirin Ichiban Beer as a beer brewed in Japan, when the beer is actually brewed in the United States.  AB also settled that case, and agreed to refund customers and change the labels on Kirin Ichiban Beer to accurately reflect where the beer is brewed.  *See Suarez v. Anheuser-Busch Companies, LLC*, Case No. 2013-33620-CA-01 (11th Cir. Ct. Fla).

52.     AB's conduct with respect to the labeling of its products demonstrates a pattern and practice of intentional mislabeling by AB.

53.     At all times relevant to this Complaint, AB acted intentionally, knowingly, and willfully to deceive consumers, including Plaintiff.

54.     At all times relevant to this Complaint, AB marketed, distributed, and sold Leffe Beer throughout the contiguous United States.

**Reasonable Consumers Have Been Misled and Damaged**

55.     Plaintiff and members of the Classes acting reasonably under the circumstances have been misled and damaged by AB's actions.

56.    In observing the Leffe Beer label, Plaintiff and members of the Classes believed that the beer was brewed in an abbey in smaller quantities and under the supervision of monks when, in reality, it is mass-produced at an automated industrial complex.

57.    Plaintiff and members of the Classes would not have purchased and/or would not have paid a premium for Leffe Beer had they known of these false representations.

58.    AB's misrepresentations have caused consumer confusion.  Plaintiff and members of the Classes believed that they were purchasing an authentic and unique quality product brewed in an abbey, and not a mass-produced beer.

59.    As noted by one consumer who uncovered AB's deceptive labeling of Leffe Beer:

> So the lesson from all of this is to check the label very carefully, otherwise you may well be falling into the trap of thinking you're drinking some traditional brew from an abbey when you're actually consuming some mass-brewed beer from a major multinational brewery.[14]

60.    This consumer felt so deceived by AB's conduct that he wrote an article titled *Deception is a bottle of Leffe*.[15]

61.    In response to this article, other consumers commented on the misleading Leffe Beer label:

- "But you have to admit, good marketing stunt"

- "Indeed just another example of how misleading logos can be 4 consumers…maybe we cld [sic] ornaise [sic] an award of most misleading logo."

- "Stella Artois was first sole [sic] in 1926 (in Canada). So the '1366' on the label is also very misleading."[16]

---

[14] https://jonworth.eu/deception-is-a-bottle-of-leffe/; (last accessed on January 19, 2016).

[15] *See id*.

[16] https://twitter.com/jonworth/status/628128695107100672; (last accessed on January 19, 2016).

62.     Further evidence of consumer confusion is found in various popular U.S. beer review websites, all of which similarly indicate that Leffe Beer is "Brewed by: Abbaye de Leffe S.A."[17]

63.     In all, Plaintiff and members of the Classes have been misled by AB's deceptive labels and packaging, and have voiced their dissatisfaction as demonstrated above.  Such consumer complaints are evidence of consumer confusion caused by AB's conduct.

64.     In addition to having been misled, Plaintiff and members of the Classes have been damaged.  Specifically, Plaintiff and members of the Classes have paid a premium for Leffe Beer over comparable products, including AB's own Stella Artois beer, which is brewed at the same location and sold in the same marketplace.

65.     Had Plaintiff and members of the Classes known the truth about Leffe Beer, they would have purchased another product and/or would not have paid a premium for the product.

66.     As a result of AB's misleading packaging and labeling, and active concealment, Plaintiff and members of the Classes were damaged when they purchased Leffe Beer and paid a premium for the product.

## AB Misled the United States Alcohol and Tobacco Tax and Trade Bureau

67.     In order to sell Leffe Beer in the United States, AB was first required to obtain a Certificate of Label Approval ("COLA") from the United States Alcohol and Tobacco Tax and Trade Bureau ("TTB"), approving the labels on the front and back of Leffe Beer.

---

[17] *See* http://www.beeradvocate.com/beer/profile/470/2137/; http://www.beer-universe.com/beer-profile/Leffe-Blonde/; (last accessed on February 17, 2016).

68.     To obtain a COLA, AB was required to submit an application to the TTB with sample labels for Leffe Beer.

69.     AB last applied and secured COLAs for Leffe Beer in 2011.[18]

70.     The COLA applications completed by AB state, in pertinent part, as follows: "Under the penalties of perjury, I declare: that…the representations on the labels attached to this form . . . truly and correctly represent the content of the containers to which these labels will be applied."

71.     The TTB, in issuing a COLA for Leffe Beer, was misled by AB into believing that Leffe Beer is an "Abbey Ale" – a beer actually brewed in an abbey.

72.     Indeed, the labels submitted by AB for approval to the TTB (pictured below) simply state that Leffe Beer is "IMPORTED BY IMPORT BRANDS ALLIANCE, ST. LOUIS, MO."

---

[18] A copy of the COLA application and approval for Leffe Blonde is attached as Exhibit A.  A copy of the COLA application and approval for Leffe Brown is attached as Exhibit B.



73.    The labels submitted by AB for approval to the TTB did **not** contain the following

language, which is presently found on Leffe Beer sold in the marketplace (pictured below):

"Brewed by N.V. INBEV BELGIUM S.A., B-1070 BRUSSELS, FOR BR. ABBAYE DE LEFFE

N.V./S.A. PLACE DE L'ABBAYE 1, B-5500 DINANT, BELGIUM."



74.     As previously discussed, the language quoted in the preceding paragraph was added to Leffe Beer labels by AB to deceive consumers into believing an association with the Abbey of Leffe, even though the Abbey has no involvement in the production, bottling, or distribution of the beer.

75.     Presumably, AB was aware of the deceptive nature of this language and, therefore, intentionally omitted it from the labels it submitted to the TTB.

76.     Under penalty of perjury, AB falsely represented to the TTB that the Leffe Beer labels truly and correctly represent the contents of Leffe Beer.

77.     Consequently, and as a result of its reliance on AB's misrepresentations made under oath, the TTB had no opportunity or incentive to investigate or confirm whether Leffe Beer is in fact brewed in an abbey.

78.     Pursuant to TTB Ruling No. 2015-1, "[b]rewers and importers are responsible for ensuring that their malt beverage labels are truthful and accurate, and they must be able to substantiate any information or claims found on a label."

79.     The issuance of a COLA for Leffe Beer did not relieve AB of its duty to ensure that its Leffe Beer labels are truthful and accurate.  As discussed, AB is unable to substantiate the information and claims found on its Leffe Beer labels.

## Facts Specific to Plaintiff Dr. Henry Vazquez

80.     During the relevant time period, Plaintiff, Dr. Henry Vazquez, purchased Leffe Beer on various occasions within the State of Florida.

81.     In making his purchases, Dr. Vazquez relied on the deceptive labeling, packing, and marketing of Leffe Beer, believing that the beer was brewed in smaller quantities in an abbey, and under the supervision of monks.

82.     At the time of making his purchases, Dr. Vazquez thought he was purchasing an authentic abbey ale, and not a mass-produced product.

83.     Based on his mistaken perceptions of Leffe Beer, the sole cause of which was AB's deceptive labeling, packing, and marketing, Dr. Vazquez paid a premium for Leffe Beer.

84.     Had Dr. Vazquez known the truth about Leffe Beer – that it is a mass-produced product and not an authentic abbey ale – Dr. Vazquez would not have paid a premium for Leffe Beer and/or would have purchased a different product.

## CLASS ACTION ALLEGATIONS

85.     Plaintiff bring this lawsuit as a class action o own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) as well as (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, ascertainability, predominance, and superiority requirements of those provisions.

86.     The Class claims are based directly from Defendant AB's conduct in actually misstating the characteristics, quality, nature, and value of its Leffe "Abbey" Beer.

87.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3); and (c)(4) of the Federal Rules of Civil Procedure on behalf of himself and a Nationwide Class (the "Nationwide Class") defined as follows:

### Nationwide Class

**All retail consumers who purchased Leffe Beer within the United States for personal, family, or household purposes, and not for resale purposes, within four (4) years prior to the filing of this Complaint.**

88.     Plaintiff seeks to represent the following Florida statewide class or subclass (the "Florida Class") defined as follows:

### Florida Subclass

33

**All retail consumers who purchased Leffe Beer within the State of Florida for personal, family, or household purposes, and not for resale purposes, within four (4) years prior to the filing of this Complaint.**

89.     Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.

90.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

## Numerosity

91.     This action satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1). Upon information and belief, Defendant AB sold its Leffe Beer to thousands of consumers, both nationwide and within the State of Florida. This Class is so numerous that individual joinder of all Class Members is impracticable.

92.     Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

## Common Questions of Law and Fact

93.     There are numerous questions of law and fact that are common to the claims of Plaintiff and Class Members  predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

a.  Whether AB falsely, deceptively and/or misleadingly misrepresented Leffe Beer as a beer brewed in an abbey when, in reality, it is mass-produced in a factory;

b.  Whether AB took measures to intentionally conceal the location of where Leffe Beer is brewed;

c.  Whether AB's misrepresentations and omissions deceived Plaintiff and members of the Classes;

d.  Whether AB made intentional misrepresentations to Plaintiff and members of the Classes;

e.  Whether AB was unjustly enriched as a result of its deceptive conduct;

f.  Whether Plaintiff and members of the Classes were damaged by AB's conduct;

g.  Whether Plaintiff and members of the Class are entitled to damages as a result of AB's conduct; and

h.  Whether AB violated Florida's Unfair and Deceptive Unfair Trade Practices Act.

94.     The common questions in this case are capable of having common answers.

## **Typicality**

95.     Plaintiff's legal claims are typical of the claims of the Class Members, and arise from the same course of conduct by Defendant AB. The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred damages relating to the Defendant AB's alleged Abbey Beer and Defendant's misrepresentations and concealments. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members and represents a common thread of misconduct resulting in damages to all Class Members. The legal

claims and relief Plaintiff seeks are typical of the legal claims and relief sought for the Class Members.

## Adequacy of Representation

96.    Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has no conflict with other Class Members.

97.    Plaintiff has retained counsel with substantial experience in prosecuting class actions, including actions involving consumer products. Putative Class Counsel have the resources, education, and experience to successfully prosecute this class action.

98.    The undersigned counsel are competent counsel experienced in class action litigation, mass torts and complex litigation. Counsel will fairly and adequately protect the interests of the class. Neither Plaintiff nor counsel have interests adverse to those of the Class.

## Ascertainability

99.    The Class is ascertainable because its members can be readily identified using sales records, production records, testimony, and other information kept by Plaintiff, the Class, Defendant and/or third parties in the usual course of business, and within their control.

## Predominance of Common Issues

100.    There are numerous common questions of law and fact in this case that predominate over any question affecting only individual Class Members. Answers to these common questions of law and fact will advance resolution of the litigation as to all Class Members and claims. These predominant common legal and factual questions include the following:

36

a. Whether AB falsely, deceptively and/or misleadingly misrepresented Leffe Beer as a beer brewed in an abbey when, in reality, it is mass-produced in a factory;

b. Whether AB took measures to intentionally conceal the location of where Leffe Beer is brewed;

c. Whether AB's misrepresentations and omissions deceived Plaintiff and members of the Classes;

d. Whether AB made intentional misrepresentations to Plaintiff and members of the Classes;

e. Whether AB was unjustly enriched as a result of its deceptive conduct;

f. Whether Plaintiff and members of the Classes were damaged by AB's conduct;

g. Whether Plaintiff and members of the Class are entitled to damages as a result of AB's conduct; and

h. Whether AB violated Florida's Unfair and Deceptive Unfair Trade Practices Act.

## Superiority

101.   Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

102.   The prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Defendant.

103.   Because adjudication with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members, or impair substantially or impede their ability to protect their interests, a class action is superior to all other methods of litigation.

104. Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would, therefore, have no effective remedy at law. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions.

105. The burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A). Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

106. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23.

## Rule 23(b)(1) Requirements

107. Certification is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against members would create a risk of:

38

a.      inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; and

b.      adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede the ability to protect their interests.

108.     More specifically the rights of Class Members regarding claims against Defendant for actively concealing the true quality, value and nature of the alleged "Abbey" Beer Products and knowingly making misrepresentations about the quality, value and nature of the "Abbey" Beer Products and failing to provide Abbey Beer Products as advertised and represented to the members of the class overlap.

109.     Under these circumstances, it is not possible for the rights of Class Members to be determined individually without disposing of or substantially affecting the rights of other Class Members as damages incurred as a result of the Defendant's acts and omissions.

## **Rule 23(b)(2) Requirements**

110.     Certification is appropriate under Fed. R. Civ. P. 23 (b)(2) because Defendant has acted in a manner generally applicable to all Class Members thereby making injunctive or declaratory relief concerning the class as a whole appropriate.

111.     More specifically Defendant has: actively concealed the true characteristics, quality, value and nature of the alleged "Abbey" Beer Products; knowingly made misrepresentations about the quality, value and nature of the alleged "Abbey" Beer Products; and failed to provide Abbey Beer Products as advertised and represented to the members of the class.

## **Rule 23(b)(3) Requirements**

112.    Plaintiff and the Class are seeking money damages. Thus, certification is appropriate under Fed. R. Civ. P. 23 (b)(3) because the common questions set forth above predominate over any questions affecting only individual issues and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The Class Members have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum. Management of the Class will be less difficult than individual lawsuits.

### Equitable Relief

113.    Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendant has acted on grounds that apply generally to the Class, and inconsistent adjudications with respect to the Defendant's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendant's discharge of its duties to perform corrective action regarding the alleged "Abbey" Beer Products.

### COUNT I
### UNJUST ENRICHMENT
### (NATIONWIDE CLASS)

114.    Plaintiff and Class Members re-allege and incorporate paragraphs 1 through 113 as if fully set forth herein, and further declare:

115.    Plaintiff and Class Members conferred a benefit upon Defendant AB by purchasing Defendant's Leffe Beer.

116.    Plaintiff and Class Members did not receive Leffe Abbey Beer, but instead received inferior, mass-produced, Beer Products of lesser quality and value.

117.    AB had knowledge of the benefit conferred upon it by Plaintiff and members of the Class.

118.    AB voluntarily accepted and retained the benefit conferred upon it by Plaintiff and members of the Class.

119.    Under the circumstances, it would be inequitable for AB to retain the benefit conferred upon it by Plaintiff and members of the Class.

120.    AB has been unjustly enriched and is required to refund Plaintiff and members of the Class the benefit they conferred upon AB.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

a.  certification of the proposed Plaintiff's Classes;

b.  appointment of the Plaintiff as representatives of the Plaintiff's Classes;

c.  appointment of the undersigned counsel as lead counsel for the Plaintiff's Classes;

d.  compensatory damages;

e.  pre and post-judgment interest;

f.  an award of taxable costs; and,

g.  any and all such further relief as this Court deems just and proper.

<u>C</u><u>OUNT</u> <u>II</u>
<u>V</u><u>IOLATION OF THE</u> <u>F</u><u>LORIDA</u> <u>D</u><u>ECEPTIVE AND</u> <u>U</u><u>NFAIR</u> <u>T</u><u>RADE</u> <u>P</u><u>RACTICES</u> <u>A</u><u>CT</u>
**(Florida Subclass)**

121.    Plaintiff and Class Members reallege and incorporate paragraphs 1 through 113 as

if fully set forth herein.

122.    This is an action for relief under sections 501.201 to 501.213 of the Florida

Deceptive and Unfair Trade Practices Act ("FDUPTA").

123.    The express purpose of FDUTPA is to "protect the consuming public...from those

who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or

practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

124.    Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child,

by and through its parent or legal guardian; firm; association; joint venture; partnership; estate;

trust; business trust; syndicate; fiduciary; corporation; or any other group or combination."

Plaintiff and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

125.    Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing,
> whether by sale, rental, or otherwise, of any good or service, or any
> property, whether tangible or intangible, or any other article,
> commodity, or thing of value, wherever situated. "Trade or
> Commerce" shall include the conduct of any trade or commerce,
> however denominated, including any nonprofit or not-for-profit
> person or activity.

126.    The advertising, soliciting, providing, offering, or distributing of alleged "Abbey"

Beer by Defendant to Plaintiff and Class Members is "Trade or Commerce" within the meaning of

section 501.203(8), Florida Statutes.

127.    FDUPTA §501.204(1) declares as unlawful "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce." The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in the Complaint equal unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to §501.204(1), Florida Statues.

128.   AB has engaged, and continues to engage, in conduct that is deceptive and misleading to consumers in violation of FDUTPA.

129.   Specifically, AB has misled consumers into believing that Leffe Beer is brewed in an abbey, which implies that the beer is brewed in smaller quantities by monks, when, in reality, the beer is mass-produced at the automated Stella Artois Brewery industrial complex.

130.   Rather than labeling its beer as an "Abbey Ale," AB should have truthfully labeled the product as an "Abbey **Style** Ale" as is the practice of AB's competitors.

131.   In furtherance of its deceptive and unconscionable acts, AB has actively concealed the location of the Leffe brewery by including a misleading address on the back of the Leffe Beer label, and through misleading marketing and corporate materials made available to the public.

132.   AB's conduct and business practices are deceptive because they are likely to deceive consumers, including Plaintiff and members of the Class.

133.   AB's conduct and practices misled and caused Plaintiff and members of the Class to pay a premium for Leffe Beer over competitor's products, and over AB's own Stella Artois, even though both beers are brewed at the same location and sold in the same marketplace.

134.   Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUPTA, in that they purchased the AB's alleged "Abbey" Beer from Defendant when the "Abbey" Beer was not, in fact, brewed in an abbey. Plaintiff and Class Members did not receive the Abbey Beer Products that they intended to purchase, as represented

by the Defendant, but instead received inferior, mass-produced, Beer Products of lesser quality and value.

135.    As a direct and proximate result of Defendant's violation of FDTUPA, Plaintiff and the Class have suffered actual damages in that they paid for Abbey Beer and received an inferior, mass-produced product of lesser quality and value so that Plaintiff and Class Members overpaid and are entitled to relief pursuant to FDUPTA §501.211(2).  Plaintiff and Class Members are entitled to recover the difference in value from what they purchased to what they truly received, and all related consequential damages.

136.    Further, as a direct and proximate result of Defendant's acts and omissions, Plaintiff and Class Members were forced to retain undersigned counsel and are obligated to pay attorneys' fees and cost. Plaintiff and Class Members are entitled to recover attorney fees and costs pursuant to FDUPTA §501.2105, upon prevailing in this matter.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

   a.   certification of the proposed Plaintiff's Classes;

   b.   appointment of the Plaintiff as representatives of the Plaintiff's Classes;

   c.   appointment of the undersigned counsel as lead counsel for the Plaintiff's Classes;

   d.   compensatory damages;

   e.   pre and post-judgment interest;

   f.   an award of taxable costs;

   g.   an award of attorneys' fees and costs pursuant to FDUPTA § 501.2105; and,

   h.   any and all such further relief as this Court deems just and proper.

## COUNT III
## NEGLIGENCE
### (BROUGHT ON BEHALF OF THE NATIONWIDE & FLORIDA CLASSES)

137.    Plaintiff and Class Members incorporate by reference paragraphs 1-113 above as if fully set forth herein, and further declare:

138.    Defendant, at all times relevant, had a duty to Plaintiff and Class Members to disclosure the true nature, characteristics, quality, value and ingredients of its alleged "Abbey" Beer Products. Defendant's duty includes, but was not limited to the following:

a.   providing consumers with actual "Abbey" Beer Products, as advertised and represented;

b.   truthfully representing the nature, characteristics, value, and quality of its alleged "Abbey" Beer Products, including but not limited to that they are not brewed in an Abbey; and

c.   exercising reasonable care to ensure that its alleged "Abbey" Beer products were accurately labeled and marketed to Plaintiff and the Class Members.

139.    Defendant, at all times relevant, breached its duty and was negligent to Plaintiff and Class Members in the following ways:

a.   failing to provide Plaintiff and Class Members with actual "Abbey" Beer Products, as advertised and represented;

b.   carelessly misrepresenting, omitting and concealing from Plaintiff and Class Members material facts relating to the quality, ingredients, nature, value and characteristics of their alleged "Abbey" Beer Products, including but not limited to that they were not brewed in a Abbey; and

c.  making false and misleading statements and omissions on its product labeling and in its advertisements, with the intention of marketing its alleged "Abbey" Beer products to Plaintiff and the Class Members.

140.    Defendant knew or should have known that its wrongful acts and omissions would cause damages to Plaintiff and Class Members.

141.    Defendant's conduct has directly and proximately caused economic damages to Plaintiff and Class Members.

142.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in that they received a product of lower quality and value than they believed they had purchased. As a result, Plaintiff and Class Members should recover the difference in value from what they purchased to what they truly received and all related consequential damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

a.  certification of the proposed Plaintiff's Classes;

b.  appointment of the Plaintiff as representatives of the Plaintiff's Classes;

c.  appointment of the undersigned counsel as lead counsel for the Plaintiff's Classes;

d.  compensatory damages;

e.  pre and post-judgment interest;

f.  an award of taxable costs; and,

g.  any and all such further relief as this Court deems just and proper.

<u>C<small>OUNT</small> IV</u>
<u>B<small>REACH OF</small> C<small>ONTRACT</small></u>
(B<small>ROUGHT ON BEHALF OF THE NATIONWIDE</small> & F<small>LORIDA CLASSES</small>)

143.    Plaintiff and Class Members incorporate by reference paragraphs 1-113 above as if fully set forth herein, and further declare:

144.    Defendant made an offer to sell Plaintiff and Class Members their alleged "Abbey" Beer Products.

145.    Plaintiff and Class Members accepted Defendant's offer and purchased Defendant's "Abbey" Beer Products.

146.    As adequate consideration, Plaintiff and Class Members paid for the alleged "Abbey" Beer Products.

147.    Plaintiff and Class Members purchased Defendant's alleged "Abbey" Beer Products.

148.    Every contract has in it an inherent duty of good faith and fair dealing.

149.    Defendant breached its contract with Plaintiff and Class Members and it breached its duty of good faith and fair dealing inherent in the contracts by:

    (a)    failing to provide Plaintiff and Class Members with actual "Abbey" Beer, as advertised and represented;

    (b)    providing Plaintiff and Class Members with "Abbey" Beer Products that were not, in fact, brewed in an abbey;

150.    As a direct and proximate cause of Defendant's breaches of contract, Plaintiff and Class Members have incurred economic damages by failing to get the value of the "Abbey" Beer Products they intended to purchase and therefore are entitled to recover the difference in value from what they purchased to what they truly received and all related consequential damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

    a.   certification of the proposed Plaintiff's Classes;

    b.   appointment of the Plaintiff as representatives of the Plaintiff's Classes;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiff's Classes;

    d.   compensatory damages;

    e.   pre and post-judgment interest;

    f.   an award of taxable costs; and,

    g.   any and all such further relief as this Court deems just and proper.

### COUNT V
### PUNITIVE DAMAGES
**(NATIONWIDE CLASS)**

151.    Plaintiff and Class Members re-allege and incorporate paragraphs 1 through 113 as 113 as if fully set forth herein.

152.    The Defendant individually and collectively acted intentionally, willfully, wanton, reckless and grossly negligent and in complete disregard for the Plaintiff's and Class Members' interests, entitling Plaintiff and Class Members to an award of punitive damages against each Defendant named herein.

153.    Punitive damages are appropriate for Defendant's intentional misrepresentations to Plaintiff and Class Members regarding the quality, characteristics, and value of their Leffe Beer Products by stating that the products were "Abbey" Beer when they were not, thereby harming the Plaintiff and all others similarly situated.

154.    The Defendant was personally guilty of intentional misconduct and gross negligence.

155.    The Defendant had actual knowledge of the wrongfulness of the conduct alleged herein and the high probability that injury or damage to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in significant damage to the Plaintiff.

156.    The Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life and safety or rights of persons exposed to such conduct.

157.    Defendant knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by the Plaintiff and Class Members.

158.    Defendant's acts and omissions were motivated solely by unreasonable financial gain.

159.    The unreasonably dangerous nature of Defendant's conduct, together with the high likelihood of damage to Plaintiff and the Class Members, each Defendant named in this claim for punitive damages should be assessed with sufficient punitive damages to be adequately punished for its bad acts and to deter others from acting in a similar manner in the future.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiff's Classes;

b.   appointment of the Plaintiff as representatives of the Plaintiff's Classes;

c.   appointment of the undersigned counsel as lead counsel for the

Plaintiff's Classes;

    d.   compensatory and punitive damages;

    e.   pre and post-judgment interest;

    f.   an award of taxable costs; and,

    g.   any and all such further relief as this Court deems just and proper.

### PRAYER FOR RELIEF

Plaintiff and Class Members adopt all prior paragraphs as if fully set forth herein. Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment for Plaintiff and the Class and against the Defendant, as follows:

A.    An order certifying the proposed Classes, designating Plaintiff as the named representative of the Classes, and designating the undersigned as Class Counsel;

B.    A finding and declaration that the Defendant's alleged "Abbey" Beer Products are not made in an abbey or by monks, as represented by Defendant AB;

C.    An order requiring Defendant to be financially responsible for notifying all Class Members about the false representations made regarding the alleged "Abbey" Beer Products;

D.    An award to Plaintiff and Class Members of compensatory damages, punitive damages, and statutory penalties;

E.    An award to Plaintiff of the Defendant's profits for selling the alleged Abbey Beer as actual Abbey Beer;

F.    An award of attorneys' fees pursuant to FDUPTA § 501.2105, Fla. Stat.;

G.    An award of costs, as allowed by law;

H.    An award of prejudgment and post judgment interest, as provided by law;

I.    An award of attorneys' fees to Plaintiff's counsel for the common benefit conferred upon the class based on a percentage of the total recovery; and

J.    Such other and further relief as the Court deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

**Colson Hicks Eidson**

255 Alhambra Circle

Penthouse

Coral Gables, Florida 33134

305.476.7400


*/s/ Ervin A. Gonzalez*

Ervin A. Gonzalez

Florida Bar No. 500720

Ervin@Colson.com

Natalie M. Rico

Florida Bar No. 065046

Natalie@Colson.com

51